Matter of Plattsburgh Citizens Coalition, Inc. v City of Plattsburgh (2026 NY Slip Op 00043)

Matter of Plattsburgh Citizens Coalition, Inc. v City of Plattsburgh

2026 NY Slip Op 00043

Decided on January 8, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 8, 2026

CV-24-1637
[*1]In the Matter of Plattsburgh Citizens Coalition, Inc., et al., Appellants,
vCity of Plattsburgh et al., Respondents.

Calendar Date:November 19, 2025

Before:Garry, P.J., Aarons, Pritzker, Powers and Corcoran, JJ.

Frank G. Zappala, Plattsburgh, for appellants.
Stafford, Owens, Murnane, Kelleher, Miller, Meyer & Zedick, PLLC, Plattsburgh (Justin R. Meyer of counsel), for City of Plattsburgh and another, respondents.

Garry, P.J.
Appeal from a judgment of the Supreme Court (John Ellis, J.), entered July 19, 2024 in Clinton County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, review a resolution of respondent Common Council of the City of Plattsburgh authorizing the subdivision of land owned by respondent City of Plattsburgh.
This proceeding is one in a series of legal challenges stemming from a $10 million grant that was awarded to respondent City of Plattsburgh pursuant to New York State's Downtown Revitalization Initiative. The intended "centerpiece" of that planned revitalization was the so-called "Durkee Street Property" or "Durkee Street Lot," which was planned to include a proposed mixed-use development and improvements to an existing dilapidated pedestrian walkway along the Saranac River. Historically, the Durkee Street lot was actually located on two separate parcels: 40 Bridge Street and 22 Durkee Street. Combined, the properties totaled approximately 4.66 acres. Approximately 1.3 acres at the southern end of the 22 Durkee Street parcel — consisting of a multi-story office building and multi-level parking structure — is leased to a nonparty and is generally not part of the revitalization efforts. To create the subject project site, the City originally intended to merge the foregoing parcels and then subdivide out the leased land, leaving an approximately 3.4-acre parcel bordered to the south by the subdivided leased parcel, to the north by Bridge Street, to the west by Durkee Street and to the east by the Saranac River. In March 2019, the City entered into an agreement with respondent Prime Plattsburgh, LLC to develop, finance, construct and manage the mixed-use development on the project site, the entirety of which was to be ultimately sold by the City to Prime following further negotiations.
The City proceeded through the required State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) process, electing to undertake study of all of its revitalization plans collectively through the use of a generic environmental impact statement. Having encountered litigation obstacles with respect to the mixed-use development (see generally Matter of Boise v City of Plattsburgh, 219 AD3d 1050 [3d Dept 2023]), and with certain grant funding allegedly set to expire, the City elected to proceed with improvements to the riverwalk, which it believed to have been adequately reviewed and generally unopposed. Meanwhile, in May 2021, the City and Prime entered into an amended and restated development agreement, intended to supersede all prior agreements. In pertinent part, the 2021 agreement reflected the City's intent to subdivide out all lands adjacent to the western bank of the Saranac River in addition to the aforementioned leased land. The agreement further reflects that the City intended to retain title to all underlying real property upon completion of [*2]the anticipated subdivision. In April 2022, respondent Common Council of the City of Plattsburgh passed Common Council Resolution No. 7.79 of 2022, authorizing the contemplated reconfiguration and subdivision and creating a 1.9-acre parcel abutting the river and containing the leased land and an approximately 2.76-acre upland parcel. In doing so, the Common Council invoked governmental immunity from local zoning provisions, as provided for by Local Law No. 2020-5 of the City of Plattsburgh (see Code of City of Plattsburgh §§ 300-36; 360-62) (hereinafter Local Law No. 5) and following application of the test set forth in Matter of County of Monroe (City of Rochester) (72 NY2d 338 [1988]).
In May 2022, petitioners commenced this combined CPLR article 78 proceeding and action for declaratory judgment, seeking, among other relief, to annul the subject resolution, allegedly alienating public waterfront land, as violative of General City Law § 20 (2) and Local Law No. 5. In July 2022, the City and the Common Council answered and moved for summary judgment dismissing the petition/complaint. The parties then entered into a so-ordered stipulation agreeing to stay the combined proceeding, preserving the parties' arguments while allowing the City to complete construction of the riverwalk. The riverwalk was subsequently completed, and, in July 2024, Supreme Court granted the motion to dismiss the petition/complaint. Petitioners appeal.
We agree with Supreme Court that the subdivision of the Durkee Street lot does not violate the General City Law. General City Law § 20 grants cities specific powers, including the power to sell and convey "real and personal property within the limits of the city, for any public or municipal purpose," except for "the rights of a city in and to its water front, ferries, bridges, wharf property, land under water, public landings, wharves, docks, streets, avenues, parks, and all other public places," which are "inalienable" unless otherwise provided by statute (General City Law § 20 [2]; see Gladsky v City of Glen Cove, 164 AD2d 567, 570-571 [2d Dept 1991], lv denied 78 NY2d 859 [1991]). Where, as here, the City has not conveyed or transferred any interest in the subject property — waterfront or otherwise — there has been no alienation and, thus, no violation of the statute (see generally Black's Law Dictionary [12th ed 2024], alienation). To the extent that petitioners continue to rely on the superseded agreement between the City and Prime, that reliance is plainly misplaced. The riverwalk is now complete, and the City retains ownership of both subdivided parcels. To the extent that petitioners continue to seek a declaration that the entirety of the Durkee Street lot is inalienable, we find that the theoretical future sale of the upland parcel posited by petitioners does not present this Court with a live controversy, even in the context of a declaratory judgment action, and it is well established that courts are prohibited from [*3]issuing advisory opinions or ruling on hypothetical inquiries (see Coleman v Daines, 19 NY3d 1087, 1090 [2012]).
Petitioners further argue that the Common Council's reliance on Matter of County of Monroe (City of Rochester) (supra) in adopting the subject resolution was improper because the test set forth therein, to determine whether an entity should be granted immunity from local zoning requirements, is "traditionally applied" where there are two municipalities with competing interests in a zoning issue. This argument, offered without further elaboration or any legal support, has been raised for the first time on appeal and is therefore not properly before us (see Matter of County of Rockland v New York State Dept. of Envtl. Conservation, ___ AD3d ___, ___, 2025 NY Slip Op 06231, *4 [3d Dept 2025]; Matter of O'Neill v New York State Tax Appeals Trib., 238 AD3d 1397, 1400 [3d Dept 2025]; see generally Matter of Crown Communication N.Y., Inc. v Department of Transp. of State of N.Y., 4 NY3d 159, 166 [2005], cert denied 546 US 815 [2005]; Armenia v Luther, 152 AD2d 928, 928 [4th Dept 1989], lv dismissed 75 NY2d 765 [1989]; Dunn v Town of Warwick, 146 AD2d 601, 604 [2d Dept 1989]).[FN1]
Finally, petitioners maintain that the Common Council violated the intent of Local Law No. 5 by using it to advance the subject project. However, the issue of the Common Council's reliance on the local law has already been decided in petitioners' favor, albeit on different grounds. In view of the foregoing and our conclusions herein, we have no occasion to address this argument, nor the related alternative ground for affirmance raised by the City and the Common Council. We accordingly affirm.
Aarons, Pritzker, Powers and Corcoran, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Under the circumstances, we do not find that the exception to preservation for unavoidable questions of law applies (see generally Matter of Regina R. v Frederick S., 198 AD3d 1124, 1124 n 2 [3d Dept 2021]).